```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
WALL STREET ENTERTAINMENT, LLC,    :   13 Civ. 1265 (LAK) (JCF)
                                   :
            Plaintiff,             :         REPORT AND
                                   :      RECOMMENDATION
      - against -                  :
                                   :
BuVISION, LLC,                     :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

    This case concerns the breach of a Co-Publishing Agreement between the plaintiff, Wall Street Entertainment, LLC ("Wall Street"), a New York based music publisher and producer, and the defendant, BuVision, LLC ("BuVision"), a Georgia based limited liability company.  (Complaint ("Compl."), ¶¶ 2-3).  The Co-Publishing Agreement, which was entered into on June 11, 2009, required BuVision to render semi-annual statements and provide corresponding semi-annual royalty payments to Wall Street, an obligation that the defendant allegedly failed to meet.  (Compl., ¶¶ 15-18).[1]

    Wall Street filed the instant motion for summary judgment on July 15, 2014, seeking (1) a declaratory judgment that BuVision breached the Co-Publishing Agreement, (2) compensatory damages for the amount owed under the contract for the period between June 11,

---

[1] While BuVision raises two defenses to Wall Street's breach of contract claim, it concedes that there is "no real dispute among the parties regarding the facts," including the defendant's failure to remit royalty statements and produce payments.  (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Memo.") at 1-2).

2009 and December 31, 2012, (3) an ex parte hearing to determine damages for the period after December 31, 2012, (4) reasonable attorneys' fees and costs (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Memo.") at 5), and (5) sanctions stemming from the failure of BuVision's principal to attend a June 2014 settlement conference (Letter of Sandy A. Roberts dated June 23, 2014 ("Roberts Letter").

For the reasons set forth below, I recommend that partial summary judgment be granted on liability but denied with respect to damages. I further recommend that Wall Street's application for attorneys' fees and costs be denied and its application for sanctions be granted in part.

Background[2]

    A.   The Exclusive Producer Agreement

On July 25, 2007, Wall Street entered into an Exclusive Producer Agreement with songwriters Melvin Hough, II and Rivelino Wouter (the "Writers"). (Compl., ¶¶ 5, 8; TKT Entertainment, LLC -w- Wall Street Entertainment, LLC/Exclusive Producer Agreement dated July 25, 2007 ("Exclusive Producer Agreement"), attached as Exh. 1 to Pl. Memo., at 14). Under the terms of the this agreement, Wall Street was granted an undivided fifty percent

_____

[2] The citations in this section refer only to facts that the parties have deemed undisputed. As discussed below, neither party annexed a statement compliant with Local Rule 56.1 to its papers. Instead, Wall Street lists "undisputed facts" in its memorandum of law (Pl. Memo. at 2-4), as to which BuVision, in its answering papers, admits there is no genuine dispute. (Def. Memo. at 1). Citations to the plaintiff's complaint and the defendant's answer relate only to facts that are not in dispute.

interest in any and all copyright and musical compositions (the "Songs") created by the Writers during the term of the agreement and was appointed the sole and exclusive administrator of the copyrights. (Compl., ¶¶ 8-9). The Exclusive Producer Agreement obligated Wall Street to pay the Writers fifty percent of any negotiated sum from any third party co-publishing agreement entered into between Wall Street and a co-publisher with respect to the Songs. (Compl., ¶ 9).

    B.   <u>The Co-Publishing Agreement</u>

On June 11, 2009, Wall Street and BuVision entered into the Co-Publishing Agreement that is at issue. (Co-Publishing Agreement by and between BuVision, LLC and Wall Street Entertainment, LLC dated June 11, 2009 ("Co-Publishing Agreement"), attached as Exh. 2 to Pl. Memo., at 1). This contract made the parties joint owners in the Songs for a specified term, which continued until three full compositions, or the fractional equivalent thereof, were completed by the Writers and released on any album by any major record label or distributor. (Co-Publishing Agreement at 1-2). In consideration for receiving a fifty percent interest in the Songs, the Co-Publishing Agreement required BuVision to submit semi-annual royalty statements to Wall Street on or before September 30 and March 31 of each year, accompanied by payments of any royalties due in connection with the Songs for the preceding semi-annual period ending June 30 and December 31, respectively. (Pl. Memo. at 3; Co-Publishing Agreement at 4).

As of January, 2011, BuVision had not rendered any royalty

statements or payments to Wall Street. (Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply Memo.") at 2). On January 14, 2011, the plaintiff sent a letter to the defendant, asserting that BuVision had failed to perform its accounting obligations under the Co-Publishing Agreement. (Letter of Louise C. West dated Jan. 14, 2011 ("West Letter"), attached as Exh. 4 to Pl. Reply Memo.). This letter notified the defendant that failing to remit a royalty statement within thirty days of the letter's receipt would result in "material breach" of the parties' agreement. (West Letter; Pl. Reply Memo. at 2). The defendant neither responded to the letter nor submitted any statements or payment to the plaintiff prior to the filing of the instant complaint. (Pl. Reply Memo. at 2).

C. <u>Procedural History</u>

On Feb. 25, 2013, Wall Street filed its complaint against BuVision for breach of contract, money damages, and attorneys' fees and costs. BuVision filed an answer on May 15, 2013, acknowledging its failure to submit any royalty statements to Wall Street. (Answer ("Ans."), ¶ 17). The defendant averred that the terms of the Co-Publishing Agreement were self-evident, but denied Wall Street's allegations "to the extent that they mischaracterize the terms of that agreement." (Ans., ¶¶ 12-18).

Following discovery, Wall Street filed the present motion seeking (1) a declaratory judgment that the Co-Publishing Agreement had been breached by BuVision, (2) an award in the amount of $133,955.82, representing compensatory damages for the period

4

between June 11, 2009 and December 31, 2012, (3) the scheduling of an ex parte hearing on damages to determine an additional amount owed for the period from January 1, 2013 to the present, and (4) reasonable attorneys' fees and costs. (Pl. Memo. at 5). As of the filing of the plaintiff's motion for summary judgment, BuVision had not rendered any royalty statements or payments to Wall Street. (Affidavit of Keith Betts dated July 14, 2014 ("Betts Aff."), attached to Pl. Memo., ¶¶ 11-12).

Although BuVision acknowledges that "there is no real dispute regarding the facts at issue" (Def. Memo. at 1), it points to two separate provisions in the Co-Publishing Agreement that allegedly bar Wall Street's claims: (1) a notice and cure provision in paragraph 18(b), and (2) a limitations provision in paragraph 8(b). (Def. Memo. at 1-3).

On June 16, 2014, following a representation by counsel that a settlement in principle had been reached but not yet executed, I ordered a settlement conference to be held on June 17, 2014. (Order dated June 16, 2014 ("June 17, 2014 Order")). The order provided that failure of BuVision's principal to attend in person would result in an assessment against BuVision of the costs incurred by plaintiff's counsel in appearing at the conference. (June 17, 2014 Order). Neither counsel for the defendant nor BuVision's principal appeared at the conference, and, as a result, Wall Street submitted a letter motion for attorneys' fees and costs, indicating counsel's hourly rate and detailing the costs incurred attending the aborted settlement conference. (Roberts Letter at 1-2).

5

Discussion

    A.   Summary Judgment

        1.   Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court will grant summary judgment if "the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-286 (2d Cir. 2002); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The opposing party then must come forward with specific materials establishing the existence of a genuine dispute. Fed. R. Civ. P. 56(c). Where the non-movant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). However, the court must inquire whether "there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249, and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. Id. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

In addition, the court's review of the record is limited to facts that would be admissible at trial. Rule 56 states that affidavits in support of or against summary judgment shall "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Accordingly, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). A party may not oppose a summary judgment motion on the basis of inadmissible evidence, unless the party can "show[] that admissible evidence will be available at trial." Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985); see also Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."). Therefore, "it is appropriate for district courts to decide questions regarding the

admissibility of evidence on summary judgment." <u>Raskin</u>, 125 F.3d at 66.  "When an affidavit itself is not admissible, then 'an implicit or explicit showing that the affiant is prepared to testify in a manner consistent with [the] affidavit is required to oppose summary judgment.'" <u>Chamberlin v. Principi</u>, No. 02 Civ. 8357, 2005 WL 1963942, at *10 (S.D.N.Y. Aug. 16, 2005) (quoting <u>Santos</u>, 243 F.3d at 684).

    2.  <u>Local Rule 56.1</u>

Local Civil Rule 56.1(a) requires a party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to annex to its motion a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which [it] contends there is no genuine issue to be tried."  Local Civil Rule 56.1(b) demands that the party opposing summary judgment include a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party."  Each numbered paragraph in the moving party's 56.1(a) statement will be deemed admitted unless controverted by defendant's 56.1(b) statement.  Local Civil Rule 56.1(c).

In its memorandum in support of summary judgment, Wall Street simply listed the material facts it deems to be "undisputed," but failed to present these in numbered paragraphs as is explicitly required under Local Civil Rule 56.1(a).  (Pl. Memo. at 2-4).  Similarly, BuVision failed to respond specifically to each statement of material fact alleged by Wall Street to be undisputed. (Def. Memo. at 1-3).

The court has the discretion to deny a motion for summary judgment for the moving party's failure to annex a compliant Local Rule 56.1 Statement. See Murcia v. County of Orange, 185 F. Supp. 2d 290, 292 (S.D.N.Y. 2002); Misla v. CVS Pharmacy, Inc., No. 99 Civ. 9989, 2001 WL 637384, at *2 (S.D.N.Y. June 8, 2001). However, the court also retains "broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (allowing de novo review of record despite moving party's compliance with Rule 56.1 when movant's statement failed to cite to admissible evidence). The purpose of Local Rule 56.1 is to aid the efficient consideration of summary judgment motions "by freeing district courts from the need to hunt through voluminous records without guidance from the parties." Id. at 74.

Where, as here, the moving party's recitation of undisputed facts is both clear and supported with citations to the record, and the non-moving party explicitly maintains that there is no dispute as to the facts at issue while simultaneously citing to the same documents, technical deviations from Local Rule 56.1 do not inhibit the court's analysis. Accordingly, the record is adequate for summary judgment.

B.   BuVision's Affirmative Defenses

There is no dispute that there was a valid agreement between the parties and that the defendant breached it. (Pl. Memo. at 2-4; Def. Memo. at 1). Instead, BuVision contends that Wall Street's claims are barred by two specific provisions in the Co-Publishing

Agreement: the notice and cure provision in paragraph 18(b) and the limitations provision in paragraph 8(b).  (Def. Memo. at 3-4).

    1.   <u>Notice and Opportunity to Cure</u>

Paragraph 18(b) of the Co-Publishing Agreement states:

> No breach of this Agreement on the part of Company [Bu Vision] shall be deemed material, unless you shall have given Company notice of such breach and Company shall fail to discontinue the practice complained of (if practice of Company is the basis of the claim of breach) or otherwise cure such breach, within thirty (30) days after receipt of such notice.

(Co-Publishing Agreement at 8).

In relying on this provision to argue that this action is barred, BuVision fails to appreciate the distinction between a breach that is material and one which, while not material, nevertheless gives rise to a claim for damages.  A material breach will have the effect of terminating the agreement and discharging the non-breaching party from its contractual obligations.  <u>ARP Films, Inc. v. Marvel Entertainment Group, Inc.</u>, 952 F.2d 643, 649 (2d Cir. 1991); <u>see also</u> <u>Jordan v. Can You Imagine, Inc.</u>, 485 F. Supp. 2d 494, 504 (S.D.N.Y. 2007).  However, a claim for damages arising out of a breach of contract may be brought without finding a breach to be material; it requires only that the non-breaching party demonstrate the existence of a valid agreement, adequate performance by the plaintiff, breach by the defendant, and damages. <u>Diesel Props S.r.l. v. Greystone Business Credit II LLC</u>, 631 F.3d 42, 52 (2d Cir. 2011) (describing necessary elements required in order to recover damages for breach of contract); <u>Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.</u>, 361 F. Supp. 2d 283,

290-91 (S.D.N.Y. 2005) (distinguishing between requirements for bringing action for breach of contract and effect of material breach).

In Drum Major Music Entertainment Inc. v. Young Money Entertainment, LLC, No. 11 Civ. 1980, 2012 WL 423350, at *3 (S.D.N.Y. Feb. 7, 2012), the court considered a contract provision similar to the one at issue here, which stated that, "no breach by [the defendant] shall be deemed material unless [the defendant] shall be given written notice of such a breach." The court found that this provision did not bar a damages action even though the plaintiff had not given prior written notice. Id. By contrast, in Rojas v. Don King Productions, Inc., No. 11 Civ. 8468, 2012 WL 760336, at *2 (S.D.N.Y. March 6, 2012), the court found that the plaintiff's breach of contract claim was barred because the notice and cure provision in question explicitly stated that failure to comply would preclude "any action." Here, as in Drum Major Music, compliance with the notice and cure provision is a condition precedent to finding a material breach, but not to the bringing of an action for damages. Paragraph 18(b), then, presents no bar to Wall Street's claim.

2.   Limitations Period

Paragraph 8(b) of the Co-Publishing Agreement contains the following provision:

> You shall be foreclosed from maintaining any action, claim or proceeding against Company in any forum or tribunal with respect to any statement or accounting rendered hereunder unless such action, claim or proceeding is commenced against Company in a court of competent jurisdiction within two (2) years after the due

date of such statement or accounting.
(Co-Publishing Agreement at 4).

It is undisputed that BuVision failed to render any accounting statements to Wall Street.  (Pl. Reply at 4; Def. Memo. at 1). Accordingly, the limitations period on which the defendant seeks to rely has not begun to run.  See Drum Major Music, 2012 WL 423350, at *3 (finding contractual provision that barred claims "eighteen months after the date such statement or accounting is rendered" to apply only to statements actually "completed and delivered" to plaintiff).  A contract may provide for a limitations period to run from the due date of an accounting, even if the accounting is never actually delivered.  See Malmsteen v. Universal Music Group, Inc., No. 10 Civ. 3955, 2012 WL 2159281, at *7-8 (S.D.N.Y. June 14, 2012) (finding limitations period to run from due date of accounting when contract provided that "all statements hereunder will be deemed conclusively to have been rendered on the due date.").  However, the Co-Publishing Agreement here contains no such language.  Wall Street's claim is therefore governed by New York's statutory limitations period for breach of contract claims, and not by the language in paragraph 8(b).

When not otherwise overridden by a valid contractual provision, the statue of limitations for a breach of contract claim in New York is six years.  See New York Civil Practice Law and Rules § 213; T & N PLC v. Fred S. James & Co., 29 F.3d 57, 58 (2d Cir. 1994).  The limitations period begins to run upon breach of the agreement, independent of whether the plaintiff was aware of

the breach.   T & N PLC, 29 F. 3d at 59-60; Clarendon National
Insurance Co. v. Culley, No. 11 Civ. 2629, 2012 WL 1453975, at *3
(S.D.N.Y. April 25, 2012).   The contract between the parties in
this case was entered into in June 2009, and BuVision's failure to
submit an accounting to Wall Street at the first semi-annual date,
September 30, 2009, commenced the running of the statutory
limitations period.   (Pl. Memo. at 3; Co-Publishing Agreement at
4).   Because Wall Street filed its complaint in February 2013, its
claims are well within the limitations period.

      C.   Wall Street's Breach of Contract Claim

      Paragraph 6 of the Co-Publishing Agreement states that
BuVision "shall pay to the Co-Publisher any and all royalties that
are payable" in connection with the Songs and in accordance with a
specific rate schedule[3] that is attached and incorporated into the
provision.   (Pl. Memo. at 3; Co-Publishing Agreement at 4).
Paragraph 8(a) outlines BuVision's obligation to render semi-annual
accountings as follows:

> On or before September 30 and March 31 of each year,
> Company shall render to you statements showing the amount
> of royalties payable hereunder for the preceding semi-
> annual period ending June 30 and December 31,
> respectively, accompanied by payment of any royalties
> shown to be due in such statements.

(Pl. Memo. at 3; Co-Publishing Agreement at 4).

      It is undisputed that the Co-Publishing Agreement was a valid

---

    [3] The rates listed in the schedule are as follows: Wall Street
is to receive 75% of Mechanical Income, 50% of Publisher's Share of
Performance Income, 65% of Cover Mechanical Income, 70% of
Synchronization Income, and 75% of All Other Income.   (Royalties
Payable by Company to Co-Publisher from Gross Income, attached as
Exh. B to Co-Publishing Agreement; see also Compl., ¶ 15).

contract and that Wall Street's performance was completed with the conveyance of the fifty percent interest in the Songs to BuVision. (Compl. ¶ 12; Ans. ¶ 12).   Paragraphs 6 and 8(a) of the Co-Publishing Agreement placed on the defendant the corresponding obligation to render royalty statements and pay Wall Street all applicable royalties.   (Co-Publishing Agreement at 4).   Finally, BuVision's failure to perform these obligations has resulted in damages to the plaintiff.

     D.   <u>Damages</u>

In its motion for summary judgment, Wall Street seeks an award of $133,955.82, representing compensatory damages for the period between June 11, 2009 and December 31, 2012, and requests an additional amount for the period from January 1, 2013 to the present, following an <u>ex parte</u> hearing on damages.   (Pl. Memo. at 5).

Calculation of damages is a two-step process, first requiring determination of the proper rule, then assessing the "plaintiff's evidence supporting the damages to be determined under [the] rule." <u>Norcia v. Dieber's Castle Tavern, Ltd.</u>, 980 F. Supp. 2d 492, 500 (S.D.N.Y. 2013) (internal quotation marks omitted).   Once the non-breaching party has demonstrated the "fact of damage," it must then establish a "stable foundation for a reasonable estimate" of damages before an award can be entered.   <u>Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.</u>, 487 F.3d 89, 110-11 (2d Cir. 2007) (internal quotation marks omitted).   The injured party may not rely on conclusory or speculative assertions, but

must point to sufficient evidence in the record.  See Acumen Re Management Corp. v. General Security National Insurance Co., No. 09 Civ. 01796, 2012 WL 3890128, at *11 (S.D.N.Y. Sep. 7, 2012) (finding plaintiff's failure to set forth evidence of reasonably certain amount of damages precluded award of compensatory damages on summary judgment); Baskin-Robbins Inc. v. S & N Prinja, Inc., 78 F. Supp. 2d 226, 232 (S.D.N.Y. 1999) (denying counterclaim seeking damages for breach of franchise agreement on summary judgment where party failed to provide facts and figures substantiating amount claimed).  "'[M]ere statement[s] that [the plaintiff] estimates his expenses at a specified figure, without more'" is not enough to enable the trier of fact to make a reasonably certain measure of damages.  Baskin-Robbins Inc., 78 F. Supp. 2d at 232 (quoting 36 N.Y. Jur. 2d, Damages § 192).

Here, the plaintiff has failed to provide admissible, non-conclusory evidence of the amounts owed, such as documentation of BuVision's receipts with respect to the licensing of the Songs. Instead, Wall Street has only provided an affidavit from one of its employees alleging that the Songs have been published, sold, and distributed on a range of albums and stating, without support, that the Co-Publishing Agreement requires BuVision to pay it $133,955.82.  (Betts Aff. ¶¶ 13-14).  While Wall Street has established BuVision's liability for breach of the Co-Publishing Agreement, it has not provided sufficient evidence of its damages.

A trial on damages is therefore required.[4]

    E.   <u>Reasonable Attorneys' Fees and Costs</u>

Wall Street requests reasonable attorneys' fees and all costs expended in this matter.  (Pl. Memo. at 5).  Under New York law, however, there is no right to an award of attorneys' fees in an ordinary breach of contract claim absent express contractual or statutory provisions stating otherwise.  <u>U.S. Naval Institute v. Charter Communications, Inc.</u>, 936 F.2d 692, 698 (2d Cir. 1991); <u>Lenard v. Design Studio</u>, 889 F. Supp. 2d 518, 537 (S.D.N.Y. 2012). The Co-Publishing Agreement contained no fee-shifting provision. Accordingly, the plaintiff's request for fees and costs expended in this litigation should be denied.

    F.   <u>Sanctions</u>

Wall Street is entitled, however, to recover reasonable attorneys' fees incurred as a result of the failure of BuVision's principal to attend the June 19, 2014 settlement conference. (Order dated June 19, 2014).

In its letter motion, the plaintiff requested an award of $4,275.00 in attorneys' fees and $413.00 in costs, for a total of $4,688.00.  (Costs Letter at 2).  The requested fees were calculated based on multiplying an hourly billing rate of $450.00 by a total of 9.5 hours, including 3.75 hours transit time traveling from Washington, DC to New York City, 1.5 hours preparing

---

[4] This is the case with respect to the entire period at issue. There is no basis for an "<u>ex parte</u>" inquest, as BuVision is always entitled to contest the assessment of damages.  Furthermore, BuVision demanded a jury trial in this case, so the issue of damages will presumptively go to a jury.

for the conference, 0.5 hours attending the conference, and 3.75 transit time returning to Washington, DC from New York City. (Costs Letter at 1).    The $413.00 sought for costs incurred is based on one Amtrak ticket, priced at $368.00, and taxi charges in the amount of $45.00.    (Costs Letter at 2).    The 7.5 hours of travel time should be discounted by fifty percent, totaling $2587.50 in attorneys' fees ((2 x $450.00) + (7.5 x $225.00)).  See Castillo v. Time Warner Cable of New York City, No. 09 Civ. 7644, 2013 WL 1759558, at *4 (S.D.N.Y. April 24, 2013) (noting that travel time is compensated at half of counsel's normal billing rate).    The plaintiff is therefore entitled to the $2,587.50 in attorneys' fees plus the $413.00 in costs, for a total of $3,000.50.

Conclusion

    For the reasons set forth above, I recommend that Wall Street be granted summary judgment on liability only and that a trial be scheduled on damages.    I further recommend that judgment be entered in favor of the plaintiff and against the defendant for $3,000.50 representing fees and costs incurred in connection with the June 2014 settlement conference, but that the plaintiff's application for an award of fees in connection with the case in general be denied.

    Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.    Such objections shall be filed

17

with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 31, 2014

Copies mailed this date to:

Sandy A. Roberts, Esq.
Charles Hildebrandt, Esq.
The Roberts Law Group, PLLC
1029 Vermont Ave, NW, 3rd Floor
Washington, DC 20005

Richard S. Busch, Esq.
Sara R. Ellis, Esq.
King & Ballow
315 Union St., Suite 1100
Nashville, TN 37201

18